# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOSEPH SORRENTINO, | |
| Plaintiff, | No. 16 C 11064 |
| v. | Judge Thomas M. Durkin |
| WEXFORD HEALTH SOURCES, INC.; DR. SALEH OBAISI; DR. ARTHUR FUNK; WARDEN RANDY PFISTER, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Joseph Sorrentino, an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center, alleges that Stateville staff and medical service providers were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See* R. 23. Specifically, Sorrentino has sued Randy Pfister, Statesville's warden at all relevant times; Wexford Health Sources, Inc., Statesville's medical services provider; and doctors employed by Wexford, namely Dr. Saleh Obaisi and Dr. Arthur Funk. *See id.* Wexford has moved to dismiss Sorrentino's claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* R. 25. For the following reasons, Wexford's motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

Sorrentino alleges that since early 2015, he has experienced severe pain in his kidney area and blood in his urine. R. 23 ¶¶ 15-16. In February 2015, Sorrentino saw a doctor from the University of Illinois-Chicago. *Id.* ¶ 18. Sorrentino alleges that the "doctor from UIC informed [him] that the issue of blood in his urine must be addressed by . . . Dr. Obaisi." *Id.*

Sorrentino alleges that there was no follow-up on the UIC doctor's diagnosis for "several months." *Id.* ¶ 18. Sorrentino and his sister made "additional requests" and "numerous communications" attempting to have Sorrentino's condition addressed. *Id.* ¶¶ 18-19. Eventually in response to these requests, IDOC Medical Director Dr. Louis Shicker directed Dr. Funk to examine Sorrentino. *Id.* ¶ 19. Sorrentino saw Dr. Funk in June 2015. *Id.* ¶ 19. Sorrentino alleges that Dr. Funk acknowledged that Sorrentino likely suffered from a kidney stone or liver damage but did not order further testing or treatment. *Id.*

Despite his allegation that Dr. Funk did not order additional tests or treatment, Sorrentino also alleges that he received a further examination the next month in July 2015 when he was sent to a specialist at "Advanced Urology." *Id.* ¶ 25. The specialist diagnosed Sorrentino with an enlarged prostate and bleeding, and recommended a CT scan. *Id.* Sorrentino did not receive this CT scan until November 2015. *Id.*

In addition to these examinations, Sorrentino also saw Dr. Obaisi "many times in 2015 and 2016." *Id.* ¶ 20. In December 2015, Dr. Obaisi informed Sorrentino that the CT scan taken the previous month showed an obstructed kidney stone. *Id.* ¶ 26. Sorrentino alleges that Dr. Obaisi failed to order any immediate treatment. *Id.* ¶ 27.

Despite the CT scan, Dr. Obaisi's diagnosis, and "several additional urgent requests for medical treatment," Sorrentino did not receive any additional

treatment until April 2016 when he was given a second CT scan. *Id.* ¶¶ 27-28. That scan reconfirmed the presence of a kidney stone. *Id.* ¶ 28.

It wasn't until July 2016 that Sorrentino had a procedure to remove the stone. *Id.* ¶ 29. Sorrentino alleges that he was told that the stone was "severely impacted," meaning that the stone "was present for so long that it had embedded in the kidney causing scar tissue to form over the stone," such that a "temporary stent" was necessary. *Id.* ¶ 29. Sorrentino also alleges that the stent was supposed to be removed within two or three weeks, but was not removed until more than five weeks after the procedure. *Id.* ¶ 30. Despite the stone's removal, Sorrentino alleges that he continues to experience both kidney pain and blood in his urine. *Id.* ¶ 31. He also alleges that ongoing requests for treatment of the kidney pain and urine in the blood have been ignored. *Id.* ¶ 31.

With respect to Wexford specifically, Sorrentino alleges that "Wexford was aware of Mr. Sorrentino's serious medical conditions through the knowledge, acts, and omissions of Wexford's authorized agents and employees acting within the scope of their employment." *Id.* ¶ 23. Sorrentino also alleges that "Wexford, through the acts and omissions of its authorized agents and employees within the scope of their employment, failed to ensure that adequate medical care was provided to Mr. Sorrentino." *Id.* ¶ 10.

**Analysis**

Sorrentino argues that the 18 month delay from his initial diagnosis in February 2015 to the procedure to remove the kidney stone in July 2016, "involves

4

so many instances of delayed treatment that it is sufficient to establish . . . . a pattern of delaying necessary medical treatment" by Wexford. R. 32 at 1, 4. "A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978)). Like municipalities, "[p]rivate corporations acting under color of state law may [also] . . . be held liable for injuries resulting from their policies and practices." *Rice v. Correctional Med. Servs. of Ill., Inc.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Shields v. Ill. Dep't of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014) ("Most defendants under § 1983 are public employees, but private companies and their employees can also act under color of state law and thus can be sued under § 1983."). To claim *Monell* liability, a plaintiff must allege "that the [entity] policymakers were deliberately indifferent as to [the] known or obvious consequences." *Thomas*, 604 F.3d at 303. "In other words, they must have been aware of the risk they created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.*

The Seventh Circuit has made clear that, absent an express policy, *Monell* liability is only appropriate where the "plaintiff [can] introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the

5

part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006) (the evidence must be such that the plaintiff can "weave . . . separate incidents together into a cognizable policy"). For an entity to be liable in this manner, the causal relationship between the policy or practice and the harm must be such that the policy was the "moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To successfully plead a *Monell* claim on a "custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). While "evidence of a single violation of federal rights can trigger municipal liability if the violation was a highly predictable consequence of the municipality's failure to act," *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004), generally a plaintiff must "provide examples of [other individuals in the defendant's position of state authority] taking actions similar to those complained of," or "plausibly allege that such examples exist." *Gill*, 850 F.3d at 344; *see also Thomas*, 604 F.3d at 303 ("[T]here is no clear consensus as to how frequently [certain] conduct must occur to impose *Monell* liability [under the custom and practice theory], except that it must be more than one instance, or even three.") (internal citations omitted). In most circumstances, the "specific actions of the [defendants] in [the plaintiff's] case alone, without more, cannot sustain a *Monell* claim based on the theory of a de facto policy." *Gill*, 850 F.3d at 344.

In this case, Sorrentino has not made any allegations about Wexford's actions with respect to anyone but himself. Since he does not allege instances of delayed medical care beyond his own, Sorrentino's allegations regarding his own experience must plausibly demonstrate that other inmates have also received delayed medical care. Sorrentino's argument in this regard is that his case was addressed by three Wexford doctors (Obaisi, Shicker, and Funk), and all three contributed to the delay in his care. Sorrentino contends that since his case was addressed by three different doctors, and each participated in the delay, the delay cannot simply be the product of individual failures, but must be result of a Wexford custom to provide untimely medical care.

But although Sorrentino speculates that Wexford caused the delay in his medical care, he points to no facts that support this speculation. Sorrentino has only alleged that he was the repeated victim of dilatory conduct by his doctors. He has not made any allegation that makes a causal connection between the doctors' conduct and Wexford, other than the fact that all three doctors work for Wexford. But this of course amounts to a *respondeat superior* theory of liability which is not cognizable under Section 1983.

Notably, the Seventh Circuit has held that a prisoner's assertion of four separate incidents he alone experienced did not meet the test of a wide ranging unconstitutional practice. *See Grieveson v. Anderson*, 538 F.3d 763, 774-75 (7th Cir. 2008). In *Grieveson*, an inmate alleged that the prison had a policy of dispensing full bottles of medication, putting inmates at risk of theft. The inmate alleged that this

7

practice occurred to him on four separate occasions. *Id.* at 773. The Seventh Circuit held that this series of events alone was not enough to infer that the practice was widespread or that it was the result of a policy choice. *Id.* at 774. Even further, the plaintiff in *Grieveson* also alleged that the practice happened to other inmates, but the Seventh Circuit found "[o]ne broad, vague statement about an occurrence affecting other inmates in a detention facility does not support the inference of a widespread custom." *Id.* Again, regardless of number, the primary problem with Sorrentino's allegation is that there is no basis to infer that Wexford was the moving force behind the delays in his medical treatment, as opposed to the decisions of the individual doctors treating him specifically.

**Conclusion**

For the foregoing reasons, Wexford's motion to dismiss, R. 25, is granted, and Sorrentino's claim against Wexford is dismissed without prejudice. Should Sorrentino, consistent with the strictures of Federal Rule of Civil Procedure 11, believe he can cure the deficiencies the Court has described in this opinion, he may file a motion for a leave to file an amended complaint by July 12, 2017. Any such motion should attach the proposed amended complaint as an exhibit, and should be supported by a brief of no more than five pages explaining how the amended complaint cures the deficiencies described in this opinion. If Sorrentino files such a motion, Wexford should not respond unless the Court so orders. If Sorrentino does not file such a motion by July 12, 2017, the dismissal of Sorrentino's claim against Wexford will be with prejudice.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 12, 2017